IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BRIAN SUM,

    Petitioner,             2: 09 - cv - 2811 - WBS TJB

  vs.

KEN CLARK, Warden

    Respondent.           <u>ORDER</u>

_____/

## I. INTRODUCTION

Petitioner is a state prisoner proceeding *pro se* with an application for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In 2006, following a jury trial, Petitioner was convicted of attempted murder, assault with a firearm, shooting at an inhabited dwelling, possession of a firearm by a felon, discharging a firearm with gross negligence as well as enhancements for using a firearm, discharging a firearm at an occupied motor vehicle and inflicting great bodily injury. Petitioner seeks relief on several grounds; specifically: (1) the trial court should have instructed the jury *sua sponte* that one may use lethal force to protect a third person who faces imminent death or great bodily injury ("Claim I"); (2) Petitioner could not be lawfully convicted for shooting a firearm in a grossly negligent manner because it is a lesser included offense of shooting a firearm at an occupied building ("Claim II"); and (3) the sentence for possession of a

1

firearm by a felon should have been stayed pursuant to Section 654 of the California Penal Code because the evidence was insufficient to establish multiple criminal intents ("Claim III").  For the following reasons, before the merits of the federal habeas petition can be analyzed, Petitioner shall either file a motion for stay and abeyance pursuant to Rhines v. Weber, 544 U.S. 269 (2005) or inform the court that he wishes to proceed on his unexhausted claims.

## II.  FACTUAL BACKGROUND[1]

> At approximately 10:00 p.m. on May 12, 2005, police responded to a shooting near a house on Hickock Drive in Stockton.  When they arrived, they found approximately 20 to 30 people standing in the street near a duplex across the street from the house.  The victim, Than Lach, a resident of the duplex, lay on the sidewalk near his front door, bleeding from a gunshot wound to the leg.  The front of the duplex, including both front doors and the garage, was damaged from being hit by bullets.  A group of people attending a party stood in the front yard of the house in the proximity to where the shots had come.
>
> Lach later told police he was inside his duplex when he heard a commotion outside.  He rushed outside to look for one of his children.  There was a large group of people, including the defendant across the street, some of them arguing with each other.  Lach stood by his garage and watched as several people tried to push the defendant away from the fight.  Defendant became upset and fired a handgun twice into the air.   Just then, a red car drove up the street, turned in front of Lach's house and stopped.  Seconds later, as defendant walked towards the car, Lach heard "six, seven, eight" gunshots.  Lach turned to go back inside the duplex and was hit in the leg with a bullet.  As he lay on the ground, he heard "three to four" more gunshots. [FN2]  Lach was taken to the hospital where he told police defendant "was shooting at the red car as it was leaving."
>
> [FN2] Lach testified that all of the windows in the red car were rolled up, and there were no gunshots from the car.
>
> Shirley Logan, Lach's neighbor and a resident of the other half of the duplex, told police she was watching television when she heard "two loud booms."  She heard people talking and went outside to investigate.  As Logan stood outside talking to her neighbors, a small red car drove slowly down the street and made a U-turn in

---

[1]  The factual background is taken from the California Court of Appeal, Third Appellate District opinion filed on March 26, 2008 and lodged as document four to Respondent's Answer which was filed in this Court on February 22, 2010 (hereinafter referred to as "Slip Op.").

front of the duplex.  Logan heard at least six or seven gunshots and saw muzzle flashes from across the street.  [FN3]  She turned and ran inside the duplex, continuing to hear gunfire as she entered her home to call 911.

[FN3]  Logan testified that she did not see any muzzle flashes coming from the car.

Youn Seraypheap, a detective with the City of Stockton Police Department, was assigned to investigate the shooting.  On May 24, 2005, Seraypheap and his partner, Detective Villanueva, interviewed defendant's mother, Toeur Mork, in front of her home.  Mork first claimed she knew nothing about the shooting, telling detectives she left the party between 7:00 p.m. and 7:30 p.m. that evening with her husband and her youngest son because she had to be at work by 9:00 p.m.  Mork said defendant was still at the party with his wife, Rinda Hoeurn, and their son when she left.  Seraypheap and Villanueva next interviewed Hoeurn.  Seraypheap told Hoeurn that defendant admitted to the shooting, and asked her to tell the truth about what happened.  Hoeurn told them that, at some point during the party, "two or three carloads of Cambodian and Laotian people" from Modesto showed up and parked in the street.  An argument later erupted between the group from Stockton and the group from Modesto.  When the people from Modesto got back into their cars (one a red Acura Integra and another a Honda Accord) to leave, Hoeurn saw defendant shoot a handgun "two or three times" in the direction of the cars.  Hoeurn ducked down and heard additional shots fired, which she believed came from the cars although she did not see any muzzle flashes.  After the shooting, Hoeurn got into Mork's car with defendant and his family and went home.

When detectives finished questioning Hoeurn, they called Mork back outside.  Seraypheap accused Mork of lying to them.  Mork admitted she was inside the house watching television when she heard gunshots.  She learned defendant was involved in the shooting and immediately left the party with her husband, her youngest son, defendant, Hoeurn, and her grandson.  Mork told Seraypheap that, in the car on the way home, her husband yelled at defendant for shooting a gun.

Police canvassed the area and found six shell casings in the street between the house and the duplex.  Four shotgun shells – two live rounds and two expended rounds – were also found in the driveway of the house where the party occurred.

(Slip Op. at p. 2-5.)

### III.  PROCEDURAL HISTORY

Petitioner was arrested and charged with:  assault with a firearm (Count I); shooting at an

1 inhabited dwelling (Count II); attempted murder of Lach (Count III); attempted murder of John
2 Doe (the unknown driver of the red Acura) (Count IV); felon in possession of a firearm (Count
3 V); and negligent discharge of a firearm (Count VI).

> At trial, Mork denied ever hearing gunshots or seeing anybody shoot a gun, and denied telling Seraypheap that her husband yelled at the defendant in the car on the way home for shooting a gun. Hoeurn testified that she and her family (including the defendant) left the party when a friend told her there was some kind of problem. Hoeurn also denied hearing or seeing anyone shooting at the party, and denied telling Seraypheap anything else about the shooting.
>
> Near the end of the prosecution's case in chief, defense counsel requested, among other things, that the jury be instructed on self-defense based on Hoeurn's pretrial statements regarding possible shots fired from the red Acura. The court denied the request for lack of evidence. The defense rested without putting on any evidence.

(Slip Op. at p. 6.) The jury found Petitioner guilty of all counts except Count III in which the trial court declared a mistrial. Petitioner was sentenced to twenty-nine years eight months to life imprisonment. The trial court stayed sentence on Count VI pursuant to California Penal Code § 654.[2]

Petitioner appealed to the California Court of Appeal, Third Appellate District. On March 26, 2008, the California Court of Appeal denied Petitioner's claims in a written opinion.[3] The California Supreme Court denied the petition for review on June 11, 2008 without

---

[2] California Penal Code § 654(a) states:

> An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other.

[3] The California Court of Appeal determined that the firearm use enhancement with respect to Count II was expressly prohibited because the use of a weapon was a necessary element of shooting at an occupied dwelling. Thus, it struck the four-year sentence for that enhancement but affirmed in all other respects. (See Slip Op. at p. 11-12, 14.)

4

discussion or citation.  Subsequently, Petitioner filed this federal habeas petition in this Court and Respondent filed an answer.

On October 1, 2010, this Court ordered Respondent to supplement his answer in the event that Claim II includes a double jeopardy claim.  On October 13, 2010, Respondent supplemented his answer in compliance with the October 1, 2010 order.  Respondent made two arguments.  First, Respondent argued that any double jeopardy claim is unexhausted.  Second, Respondent argued that any double jeopardy claim can be denied on the merits.

IV.  ANALYSIS

A.  Exhaustion

A petitioner who is in state custody and wishes to collaterally challenge his conviction by a petition for writ of habeas corpus must exhaust state judicial remedies.  See 28 U.S.C. § 2254(b)(1).  The exhaustion doctrine is based on comity to the state court and gives the state court the initial opportunity to correct the state's alleged constitutional deprivations.  See Coleman v. Thompson, 501 U.S. 722, 731 (1991).  A petitioner can satisfy the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider each claim before presenting it to the federal court.  See Duncan v. Henry, 513 U.S. 364, 365 (1995) (per curiam); Picard v. Connor, 404 U.S. 270, 276 (1971).  A federal court will find that the highest state court was given a full and fair opportunity to hear a claim if the petitioner has presented the highest state court with the claim's factual and legal basis.  See Duncan, 513 U.S. at 365.  The Petitioner must specifically tell the state court that he was raising a federal constitutional claim.  See id. at 365-66; Lyons v. Crawford, 232 F.3d 666, 669 (9th Cir. 2000), amended by, 247 F.3d 904 (9th Cir. 2001).

In Duncan, the United States Supreme Court reiterated the rule as follows:

> In Picard v. Connor, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 . . . (1971), we said that exhaustion of state remedies that petitioners "fairly presen[t]" federal claims to the state courts in order to give the State the "'opportunity to pass upon and correct' alleged violations of the prisoners' federal rights" (some internal

5

> quotation marks omitted). If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution. If a habeas petitioner wishes to claim that an evidentiary hearing at a state court trial denied him due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court.

Duncan, 513 U.S. at 365-66. The Ninth Circuit examined the rule further in Lyons, 232 F.3d at 668-69 by stating:

> Our rule is that a state prisoner has not "fairly presented" (and thus exhausted) his federal claims in state court unless he specifically indicated to that court that those claims were based on federal law. See Shumway v. Payne, 223 F.3d 982, 987-88 (9th Cir. 2000). Since the Supreme Court's decision in Duncan, this court has held that the petitioner must make the federal basis of the claim explicit either by citing federal law or the decisions of federal courts, even if the federal basis is "self-evident," Gatlin v. Madding, 189 F.3d 882, 889 (9th Cir. 1999) (citing Anderson v. Harless, 459 U.S. 4, 7 (1982), or the underlying claim would be decided under state law on the same considerations that would control resolution of the claim on federal grounds, see, e.g., Hiivala v. Wood, 195 F.3d 1098, 1106-07 (9th Cir. 1999) . . . In Johnson, we explained that the petitioner must alert the state court to the fact that the relevant claim is a federal one without regard to how similar the state and federal standards for reviewing the claim may be or how obvious the violation of federal law is.

Claim II of Petitioner's federal habeas petition can be construed as giving rise to a federal double jeopardy claim. See Boag v. MacDougall, 454 U.S. 364, 365 (1982) (per curiam) (instructing federal courts to construe *pro se* pleadings liberally). Petitioner alleges that he was improperly convicted of Count VI (shooting a firearm in a grossly negligent manner) because it was a lesser included offense of Count II (shooting a firearm at an occupied building). "The Double Jeopardy Clause is implicated when a defendant has been convicted under two different criminal statutes and both statutes prohibit the same offense or one offense is a lesser included offense of the other." United States v. Schales, 546 F.3d 965, 977 (9th Cir. 2008) (citations omitted); United States v. Davenport, 519 F.3d 940, 943 (9th Cir. 2008) ("When a defendant has violated two different criminal statutes, the double jeopardy prohibition is implicated when both statutes

1 prohibit the same offense or when one offense is a lesser included offense of the other.") (citing
2 Rutledge v. United States, 517 U.S. 292, 297 (1996)).  Thus, Petitioner's argument that he could
3 not be convicted of Count VI because it is a lesser included offense of Count II implies a double
4 jeopardy claim.

5      Nevertheless, upon reviewing Petitioner's counseled petition for review to the California
6 Supreme Court, petitioner based this claim during the state court proceedings on direct appeal
7 primarily on state law.  For example, the petition for review argued that "[u]nder *California law,*
8 a defendant cannot be convicted of a greater offense and a lesser offense included within it."
9 (Resp't's Answer, Ex. 5 at p. 11 (emphasis added).)  Furthermore, none of the cases cited to by
10 Petitioner in his petition to the California Supreme Court discuss the federal law of double
11 jeopardy.  See Peterson v. Lampert, 319 F.3d 1153, 1158 (9th Cir. 2003) (en banc) ("[F]or
12 purposes of exhaustion, a citation to a state case analyzing a federal constitutional issue serves
13 the same purpose as a citation to a federal case analyzing such an issue."); see also Castillo v.
14 McFadden, 399 F.3d 993, 999 (9th Cir. 2005) ("In short, the petitioner must have either
15 referenced specific provisions of the federal constitution or cited to federal or state cases
16 involving the legal standard for a federal constitutional violation . . . . it is not enough to raise a
17 state claim that is analogous or closely similar to a federal claim.").

18      Additionally, the petition for review to the California Supreme Court cited to the
19 Fourteenth Amendment's due process clause; specifically, Petitioner argued that "[t]o the extent
20 the failure to follow state procedures directly or indirectly impairs a liberty interest, namely the
21 right not to suffer a dual conviction when one offense is necessarily included in the other, the
22 error results in a denial of due process under the Fourteenth Amendment.  (Hicks v. Oklahoma
23 (1980) 447 U.S. 343, 346.)"  (Resp't's Answer, Ex. 5 p. 12-13.)  However, mere "general appeals
24 to broad constitutional principles, such as due process, equal protection, and the right to a fair
25 trial, do not establish exhaustion."  Hiivala, 195 F.3d at 1106.  Thus, the fact that Petitioner cited
26 to the Fourteenth Amendment's Due Process Clause in his petition for review to the California

Supreme Court does not mean that he exhausted a Fifth Amendment double jeopardy claim. Therefore, Petitioner has not exhausted his federal claim under the Fifth Amendment's Double Jeopardy provision as stated in Claim II of his petition.

A federal court has the power to deny an unexhausted habeas claim on the merits. See 28 U.S.C. 2254(b). The Ninth Circuit has explained that a federal court considering a habeas corpus petition may deny an unexhausted claim on the merits when it is perfectly clear that the claim is not "colorable." See Cassett v. Stewart, 406 F.3d 614, 624 (9th Cir. 2005). However, Petitioner may have a colorable claim on federal double jeopardy grounds for being convicted for shooting a firearm in a grossly negligent manner (Count VI) when he was convicted of shooting at an inhabited dwelling (Count II). See, e.g., People v. Ramirez, 45 Cal. 4th 980, 990, 89 Cal. Rptr. 3d 586, 201 P.3d 466 (2009) (holding that discharging a firearm in a grossly negligent manner is a necessarily included lesser offense of shooting at an inhabited dwelling house).

B. Option to Stay

Because the federal habeas petition includes both exhausted and unexhausted claims, it is deemed a "mixed" petition. Petitioner should be given an opportunity to file a motion to stay this action pending exhaustion of the double jeopardy claim as included in Claim II.[4]

In Rhines, 544 U.S. 269, the United States Supreme Court found that a stay and abeyance of a mixed federal habeas petition should be available only in the limited circumstances where: (1) good cause is shown for failure to having first exhausted the claim in state court; (2) the claim at issue potentially has merit; and (3) that there has been no indication that the petitioner has been intentionally dilatory in pursuing the litigation. See id. at 277-78. If the Petitioner wishes to stay this action, the Petitioner should file a motion addressing the Rhines factors, including a showing

---

[4] The federal habeas corpus statute imposes a one-year statute of limitations. Typically, the one year period begins to run when the state court judgment became final by the conclusion of direct review or the expiration of time for seeking direct review. Nonetheless, the statute of limitations is tolled while a properly filed state post-conviction or other collateral review is pending. See 28 U.S.C. § 2244(d).

of good cause for failing to exhaust his federal double jeopardy claim as it is included in Claim II.[5]

## V.  CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1. Petitioner shall be granted twenty-eight days to inform the court whether he seeks to (a) stay and abey the federal habeas petition pending state court exhaustion of the unexhausted federal double jeopardy claim as stated in Claim II of the instant federal habeas petition by filing a motion to stay and abey pursuant to Rhines, or (b) proceed on the instant petition.

2. If petitioner elects to proceed on the instant petition on his exhausted claims, the unexhausted federal double jeopardy claim included within Claim II will be deemed stricken and the remaining portion of Claim II will be considered along with the rest of Petitioner's federal habeas petition.

DATED:  November 22, 2010

_____
TIMOTHY J BOMMER
UNITED STATES MAGISTRATE JUDGE

---

[5] Should Petitioner seek to file a Rhines stay and abey motion in federal court, nothing precludes him from acting immediately to exhaust his federal double jeopardy claim in state court while his Rhines motion is pending in federal court.