1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   BRIAN SUM,

11            Petitioner,                    No.  2: 09 - cv - 2811 WBS TJB

12        vs.

13   KEN CLARK, Warden

14            Respondent.              FINDINGS AND RECOMMENDATIONS

15   _____/

16                            I.  INTRODUCTION

17        Petitioner is proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. §

18   2254.  Following a jury trial, Petitioner was convicted of attempted murder, assault with a

19   firearm, shooting at an inhabited dwelling, possession of a firearm by a felon, discharging a

20   firearm with gross negligence as well as enhancements for using a firearm, discharging a firearm

21   at an occupied motor vehicle and inflicting great bodily injury.  Petitioner seeks relief on several

22   grounds; specifically:  (1) the trial court should have instructed the jury *sua sponte* that one may

23   use lethal force to protect a third person who faces imminent death or great bodily injury ("Claim

24   I"); (2) Petitioner could not be lawfully convicted for shooting a firearm in a grossly negligent

25   manner because it is a lesser included offense of shooting a firearm at an occupied building

26   ("Claim II"); and (3) the sentence for possession of a firearm by a felon should have been stayed

1

1    pursuant to Section 654 of the California Penal Code because the evidence was insufficient to

2    establish multiple criminal intents ("Claim III").  After counsel was appointed, Petitioner filed a

3    motion to stay and abey these proceedings so that he could exhaust a federal double jeopardy

4    argument to the extent that Claim II was construed as including.  For the following reasons, the

5    motion to stay and abey should be denied.

6                                II. FACTUAL BACKGROUND[1]

7    At approximately 10:00 p.m. on May 12, 2005, police responded to
     a shooting near a house on Hickock Drive in Stockton.  When they
8    arrived, they found approximately 20 to 30 people standing in the
     street near a duplex across the street from the house.  The victim,
9    Than Lach, a resident of the duplex, lay on the sidewalk near his
     front door, bleeding from a gunshot wound to the leg.  The front of
10   the duplex, including both front doors and the garage, was
     damaged from being hit by bullets.  A group of people attending a
11   party stood in the front yard of the house in the proximity to where
     the shots had come.

12
     Lach later told police he was inside his duplex when he heard a
13   commotion outside.  He rushed outside to look for one of his
     children.  There was a large group of people, including the
14   defendant across the street, some of them arguing with each other.
     Lach stood by his garage and watched as several people tried to
15   push the defendant away from the fight.  Defendant became upset
     and fired a handgun twice into the air.   Just then, a red car drove
16   up the street, turned in front of Lach's house and stopped.  Seconds
     later, as defendant walked towards the car, Lach heard "six, seven,
17   eight" gunshots.  Lach turned to go back inside the duplex and was
     hit in the leg with a bullet.  As he lay on the ground, he heard
18   "three to four" more gunshots. [FN2]  Lach was taken to the
     hospital where he told police defendant "was shooting at the red
19   car as it was leaving."
     [FN2]  Lach testified that all of the windows in the red car were
20   rolled up, and there were no gunshots from the car.

21   Shirley Logan, Lach's neighbor and a resident of the other half of
     the duplex, told police she was watching television when she heard
22   "two loud booms."  She heard people talking and went outside to
     investigate.  As Logan stood outside talking to her neighbors, a
23   small red car drove slowly down the street and made a U-turn in
     front of the duplex.  Logan heard at least six or seven gunshots and

24

25        [1]  The factual background is taken from the California Court of Appeal, Third Appellate
     District opinion filed on March 26, 2008 and lodged as document four to Respondent's Answer
26   which was filed in this Court on February 22, 2010 (hereinafter referred to as "Slip Op.").

                                              2

1   saw muzzle flashes from across the street.  [FN3]  She turned and
    ran inside the duplex, continuing to hear gunfire as she entered her
2   home to call 911.

3   [FN3]  Logan testified that she did not see any muzzle flashes
    coming from the car.
4
    Youn Seraypheap, a detective with the City of Stockton Police
5   Department, was assigned to investigate the shooting.  On May 24,
    2005, Seraypheap and his partner, Detective Villanueva,
6   interviewed defendant's mother, Toeur Mork, in front of her home.
    Mork first claimed she knew nothing about the shooting, telling
7   detectives she left the party between 7:00 p.m. and 7:30 p.m. that
    evening with her husband and her youngest son because she had to
8   be at work by 9:00 p.m.  Mork said defendant was still at the party
    with his wife, Rinda Hoeurn, and their son when she left.
9   Seraypheap and Villanueva next interviewed Hoeurn.  Seraypheap
    told Hoeurn that defendant admitted to the shooting, and asked her
10  to tell the truth about what happened.  Hoeurn told them that, at
    some point during the party, "two or three carloads of Cambodian
11  and Laotian people" from Modesto showed up and parked in the
    street.  An argument later erupted between the group from
12  Stockton and the group from Modesto.  When the people from
    Modesto got back into their cars (one a red Acura Integra and
13  another a Honda Accord) to leave, Hoeurn saw defendant shoot a
    handgun "two or three times" in the direction of the cars.  Hoeurn
14  ducked down and heard additional shots fired, which she believed
    came from the cars although she did not see any muzzle flashes.
15  After the shooting, Hoeurn got into Mork's car with defendant and
    his family and went home.
16
    When detectives finished questioning Hoeurn, they called Mork
17  back outside.  Seraypheap accused Mork of lying to them.  Mork
    admitted she was inside the house watching television when she
18  heard gunshots.  She learned defendant was involved in the
    shooting and immediately left the party with her husband, her
19  youngest son, defendant, Hoeurn, and her grandson.  Mork told
    Seraypheap that, in the car on the way home, her husband yelled at
20  defendant for shooting a gun.

21  Police canvassed the area and found six shell casings in the street
    between the house and the duplex.  Four shotgun shells – two live
22  rounds and two expended rounds – were also found in the
    driveway of the house where the party occurred.
23

24  (Slip Op at p. 2-5.)

25                  III.  PROCEDURAL HISTORY

26  Petitioner was arrested and charged with:  assault with a firearm (Count I); shooting at an

                                     3

1  inhabited dwelling (Count II); attempted murder of Lach (Count III); attempted murder of John

2  Doe (the unknown driver of the red Acura) (Count IV); felon in possession of a firearm (Count

3  V); and negligent discharge of a firearm (Count VI).

4          At trial, Mork denied ever hearing gunshots or seeing anybody
            shoot a gun, and denied telling Seraypheap that her husband yelled
5          at the defendant in the car on the way home for shooting a gun.
            Hoeurn testified that she and her family (including the defendant)
6          left the party when a friend told her there was some kind of
            problem.  Hoeurn also denied hearing or seeing anyone shooting at
7          the party, and denied telling Seraypheap anything else about the
            shooting.
8
            Near the end of the prosecution's case in chief, defense counsel
9          requested, among other things, that the jury be instructed on self-
            defense based on Hoeurn's pretrial statements regarding possible
10         shots fired from the red Acura.  The court denied the request for
            lack of evidence.  The defense rested without putting on any
11         evidence.

12  (Slip Op. at p. 6.)  The jury found Petitioner guilty of all counts except Count III in which the

13  trial court declared a mistrial.  Petitioner was sentenced to twenty-nine years eight months to life

14  imprisonment.  The trial court stayed sentence on Count VI (negligent discharge of a firearm)

15  pursuant to California Penal Code § 654.[2]

16          Petitioner appealed to the California Court of Appeal, Third Appellate District.  On

17  March 26, 2008, the California Court of Appeal denied Petitioner's claims in a written opinion.[3]

18  In his petition for review to the California Supreme Court, Petitioner made several arguments

19  _____

20          [2] California Penal Code § 654(a) states:

21          An act or omission that is punishable in different ways by different
            provisions of law shall be punished under the provision that
22         provides for the longest potential term of imprisonment, but in no
            case shall the act or omission be punished under more than one
23         provision.  An acquittal or conviction and sentence under any one
            bars a prosecution for the same act or omission under any other.
24

25          [3] The California Court of Appeal determined that the firearm use enhancement with
     respect to Count II was expressly prohibited because the use of a weapon was a necessary
     element of shooting at an occupied dwelling.  Thus, it struck the four-year sentence for that
26  enhancement but affirmed the judgment in all other respects.  (See Slip Op. at p. 11-12, 14.)

1  including the following, "[t]o the extent the failure to follow state procedures directly or

2  indirectly impairs a liberty interest, namely the right not to suffer a dual conviction when one

3  offense is necessarily included in the other, the error results in a denial of due process under the

4  Fourteenth Amendment.  (Hicks v. Oklahoma (1980) 447 U.S. 343, 346.)"  (Resp't's Lodged

5  Doc. 5 at p. 13.)  Thus, Petitioner's claim to the extent it contained a federal dimension was on a

6  failure to follow state procedures.

7       The California Supreme Court denied the petition for review on June 11, 2008 without

8  discussion or citation.  Subsequently, Petitioner filed this federal habeas petition in this Court

9  and Respondent filed an answer.

10      On October 1, 2010, this Court ordered Respondent to supplement his answer in the event

11  that Claim II of the federal petition included a federal double jeopardy claim.  On October 13,

12  2010, Respondent supplemented his answer in compliance with the October 1, 2010 order.

13  Respondent made two arguments.  First, Respondent argued that any double jeopardy claim is

14  unexhausted.  Second, Respondent argued that any double jeopardy claim can be denied on the

15  merits.

16      On November 22, 2010, the undersigned construed Claim II as giving rise to a federal

17  double jeopardy claim.  This finding was made because federal courts have a duty to construe pro

18  se habeas filings liberally.  See Roy v. Lampert, 465 F.3d 964, 970 (9th Cir. 2006).  Petitioner

19  alleged the following in his federal habeas petition, "Appellant could not lawfully be convicted

20  for shooting a firearm in a grossly negligent manner COUNT 6 because it is a lesser included

21  offense of shooting a firearm at an occupied building."  (Pet'r's Pet. at p. 6.)  Thus, construing

22  the petition liberally, the undersigned determined that Claim II could give rise to a Double

23  Jeopardy claim because "[t]he Double Jeopardy Clause is implicated when a defendant has been

24  convicted under the two different criminal statutes and both statutes prohibit the same offense or

25  one offense is a lesser included offense of the others."  United States v. Schales, 546 F.3d 965,

26  977 (9th Cir. 2008) (citations omitted); United States v. Davenport, 519 F.3d 940, 943 (9th Cir.

1  2008) ("When a defendant has violated two different criminal statutes, the double jeopardy

2  provision is implicated when both statutes prohibit the same offense or when one offense is a

3  lesser included offense of the other.") (citing Rutledge v. United States, 517 U.S. 292, 297

4  (1996)).

5       Nevertheless, it was determined that Petitioner failed to exhaust his federal double

6  jeopardy claim.  In the November 22, 2010 order, the undersigned stated that Petitioner's broad

7  citation to the federal due process clause in the state filings was insufficient to exhaust a federal

8  double jeopardy claim.  As noted by the Ninth Circuit in Lyons v. Crawford, 232 F.3d 666, 668-

9  69 (9th Cir. 2000), amended by, 247 F.3d 904 (9th Cir. 2001):

10      Our rule is that a state prisoner has not "fairly presented" (and thus
    exhausted) his federal claims in state court unless he specifically

11  indicated to that court that those claims were based on federal law.
    See Shumway v. Payne, 223 F.3d 982, 987-88 (9th Cir. 2000).

12  Since the Supreme Court's decision in Duncan, this court has held
    that the petitioner must make the federal basis of the claim explicit

13  either by citing federal law or the decisions of federal courts, even
    if the federal basis is "self-evident," Gatlin v. Madding, 189 F.3d

14  882, 889 (9th Cir. 1999) (citing Anderson v. Harless, 459 U.S. 4, 7
    (1982), or the underlying claim would be decided under state law

15  on the same considerations that would control resolution of the
    claim on federal grounds, see, e.g., Hiivala v. Wood, 195 F.3d

16  1098, 1106-07 (9th Cir. 1999) . . . In Johnson, we explained that
    the petitioner must alert the state court to the fact that the relevant

17  claim is a federal one without regard to how similar the state and
    federal standards for reviewing the claim may be or how obvious

18  the violation of federal law is.

19  Petitioner's state filings failed to apprise the state courts of a possible federal double jeopardy

20  argument as his claim as stated to the state courts related to "state procedures."

21       Even though the federal habeas petition was liberally construed as including a federal

22  double jeopardy claim, the matter was unexhausted.  A court can dismiss a claim on the merits

23  even if it is unexhausted if it is determined that the claim is not "colorable."  See Cassett v.

24  Stewart, 406 F.3d 614, 624 (9th Cir. 2005).  However, in 2009, the California Supreme Court

25  decided People v. Ramirez, 45 Cal. 4th 980, 990, 89 Cal. Rptr. 3d 586, 201 P.3d 466 (2009).  In

26  that case, the California Supreme Court held that discharging a firearm in a grossly negligent

1   manner was a necessarily included lesser offense of shooting at an inhabited dwelling.  Thus, in

2   light of Ramirez, it was determined that Petitioner at least had a "colorable" federal double

3   jeopardy claim.  Ultimately, counsel was appointed to represent Petitioner so that Petitioner

4   could decide whether to file a motion to stay and abey these federal habeas proceedings pending

5   exhaustion of his double jeopardy argument in the state courts, or move forward only on his

6   exhausted arguments.

7          Subsequently, Petitioner filed a motion to stay and abey these proceedings pursuant to

8   Rhines v. Weber, 544 U.S. 269 (2005).  Respondent filed a response in opposition to the motion

9   to stay and abey and Petitioner filed a reply brief.

10                           IV.  MOTION TO STAY AND ABEY

11         Petitioner seeks to stay and abey this federal habeas proceedings pursuant to Rhines, 544

12  U.S. 269 so that he can exhaust his argument within Claim II that his conviction for shooting a

13  firearm in a grossly negligent manner violated the Double Jeopardy Clause as it is a lesser

14  included offense of shooting a firearm at an occupied building.  In Rhines, 544 U.S. at 277-78,

15  the United States Supreme Court found that a stay and abeyance of a mixed federal habeas

16  petition should be available only in the limited circumstance that good cause is shown for a

17  failure to have first exhausted the claims in state court, that the claim or claims at issue

18  potentially have merit and that there has been no indication that petitioner has been intentionally

19  dilatory in pursuing the litigation.

20         "Good cause" under Rhines is not clearly defined.  The Supreme Court has explained that

21  in order to promote AEDPA's twin goals of encouraging the finality of state judgments and

22  reducing delays in federal habeas review, "stay and abeyance should be available only in limited

23  circumstances."  Rhines, 544 U.S. at 277.  The Ninth Circuit has explained that the Rhines good

24  cause standard does not require a petitioner to show that "extraordinary circumstances"

25  prohibited him from exhausting his claims.  See Jackson v. Roe, 425 F.3d 654, 661-62 (9th Cir.

26  2005).  However, the Ninth Circuit has also held that a petitioner's mere "impression" that his

1    attorney had included a claim in an appellate brief did not constitute good cause for petitioner's

2    failure to exhaust.  See Wooten v. Kirkland, 540 F.3d 1019, 1024 (9th Cir. 2008).  In Wooten,

3    the Ninth Circuit explained that such a standard "would render stay-and-abey orders routine" and

4    thus, "would run afoul of Rhines and its instruction that the district courts should only stay mixed

5    petitions in 'limited circumstances.'"  Id.

6         Petitioner makes two arguments in attempting to establish "good cause."  First, Petitioner

7    argues that appellate counsel's performance was defective in failing to inform the state courts of

8    the double jeopardy argument as well as the fact that the California Supreme Court had already

9    granted review and was awaiting further briefing from the parties in Ramirez, 45 Cal. 4th 980, 89

10   Cal. Rptr. 3d 586, 201 P.3d 466.  Second, Petitioner argues that "good cause" is established

11   because Petitioner was "untrained and knowledgeable about the law and about the requirements

12   of federal habeas and exhaustion of state remedies."  (Pet'r's Mot. Staty & Abey at p. 3.)  Both of

13   these arguments are unavailing.

14        Petitioner's ineffective assistance of counsel "good cause" argument must fail because if

15   this was considered good cause, then all federal habeas petitioners raising ineffective assistance

16   of appellate counsel would be entitled to a stay.  See Wooten, 540 F.3d at 1024 (rejecting "good

17   cause" argument because it would "render stay-and-abey orders routine" and thus contradict the

18   Supreme Court's instruction "that district courts should only stay mixed petitions in limited

19   circumstances.'").  Petitioner fails to explain why he could not exhaust his Double Jeopardy

20   Claim in a state habeas petition before proceeding to federal court.  See Meredith v. Lopez, Civ.

21   No. 10-1395, 2011 WL 2621359, at *3 (E.D. Cal. June 30, 2011); Martin v. Neotti, Civ. No. 10-

22   1279, 2010 WL 4570043, at *4 (C.D. Cal. Aug. 10, 2010), report and recommendation adopted

23   by, 2010 WL 4570217 (C.D. Cal. Nov. 3, 2010); Givens v. McDonald, Civ. No. 09-3742, 2010

24   WL 144813, at *3 n. 1 (N.D. Cal. Jan. 11, 2010) ("Givens' assertion that Claims 1, 4 and 5 were

25   not presented due to ineffective assistance of counsel does not alone show good cause for a stay.

26   Among other things, he has not shown what counsel did that prevented him from raising those

1  claims in state court in the many months since his direct appeal concluded.").   Furthermore,

2  Petitioner's argument that he is ignorant of the law is also insufficient to satisfy the requisite

3  Rhines "good cause" standard.  See Orrostieta v. Virga, Civ. No. 10-478, 2010 WL 5676357, at

4  *4 (C.D. Cal. Sept. 23, 2010) ("if the Court accepted Petitioner's argument as good cause, all

5  habeas petitioners would be entitled to a stay simply by asserting their lack of education or

6  ignorance of the law."), report and recommendation adopted by, 2011 WL 33484 (C.D. Cal. Jan.

7  28, 2011); Holloway v. Curry, Civ. No. 09-922, 2010 WL 2985078, at *3 (E.D. Cal. July 27,

8  2010) ("[C]ourts have held that neither a petitioner's reliance on appellate counsel or ignorance

9  of the exhaustion requirement are sufficient to establish good cause under Rhines."), report and

10 recommendation adopted by, 2010 WL 3703836 (E.D. Cal. Sept. 17, 2010); Hamilton v. Clark,

11 Civ. No. 08-1008, 2010 WL 530111, at *2 (E.D. Cal. Feb. 9, 2010) (stating that ignorance of the

12 law are common among prisoners and does not constitute good cause for failure to exhaust).

13      For the foregoing reasons, Petitioner failed to establish the requisite "good cause" under

14 Rhines.  Accordingly, the remaining Rhines factors need not be analyzed.  As the motion to stay

15 and abey should be denied, the double jeopardy argument, to the extent it was liberally construed

16 within Claim II should be stricken and the merits of Petitioner's remaining claims should be

17 considered.  Because Respondent already answered the claims that should not be stricken (Dkt.

18 No. 17.), no additional answer from Respondent as to Petitioner's claims should be deemed

19 necessary at this stage of the proceedings.

20                                         V.  CONCLUSION

21      Accordingly, IT IS HEREBY RECOMMENDED that:

22      1.      Petitioner's motion for stay and abeyance (Dkt. No. 32) be DENIED; and

23      2.      Petitioner's double jeopardy argument as construed within Claim II be dismissed

24              as unexhausted.

25      These findings and recommendations are submitted to the United States District Judge

26 assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days

                                            9

after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within seven days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED:  August 24, 2011

TIMOTHY J BOMMER
UNITED STATES MAGISTRATE JUDGE

10