IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BRIAN SUM,

Petitioner, 2: 09 - cv - 2811 WBS TJB

vs.

KEN CLARK, Warden

Respondent. FINDINGS AND RECOMMENDATIONS

______________________________/

I. INTRODUCTION

Petitioner is proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Following a jury trial, Petitioner was convicted of attempted murder, assault with a firearm, shooting at an inhabited dwelling, possession of a firearm by a felon, discharging a firearm with gross negligence as well as enhancements for using a firearm, discharging a firearm at an occupied motor vehicle and inflicting great bodily injury. Petitioner seeks relief on several grounds; specifically: (1) the trial court should have instructed the jury *sua sponte* that one may use lethal force to protect a third person who faces imminent death or great bodily injury ("Claim I"); (2) Petitioner could not be lawfully convicted for shooting a firearm in a grossly negligent manner because it is a lesser included offense of shooting a firearm at an occupied building

("Claim II")[1]; and (3) the sentence for possession of a firearm by a felon should have been stayed pursuant to Section 654 of the California Penal Code because the evidence was insufficient to establish multiple criminal intents ("Claim III"). For the following reasons, the habeas petition should be denied.

## II. FACTUAL BACKGROUND[2]

> At approximately 10:00 p.m. on May 12, 2005, police responded to a shooting near a house on Hickock Drive in Stockton. When they arrived, they found approximately 20 to 30 people standing in the street near a duplex across the street from the house. The victim, Than Lach, a resident of the duplex, lay on the sidewalk near his front door, bleeding from a gunshot wound to the leg. The front of the duplex, including both front doors and the garage, was damaged from being hit by bullets. A group of people attending a party stood in the front yard of the house in the proximity to where the shots had come.
>
> Lach later told police he was inside his duplex when he heard a commotion outside. He rushed outside to look for one of his children. There was a large group of people, including the defendant across the street, some of them arguing with each other. Lach stood by his garage and watched as several people tried to push the defendant away from the fight. Defendant became upset and fired a handgun twice into the air. Just then, a red car drove up the street, turned in front of Lach's house and stopped. Seconds later, as defendant walked towards the car, Lach heard "six, seven, eight" gunshots. Lach turned to go back inside the duplex and was hit in the leg with a bullet. As he lay on the ground, he heard "three to four" more gunshots. [FN2] Lach was taken to the hospital where he told police defendant "was shooting at the red car as it was leaving."
>
> > [FN2] Lach testified that all of the windows in the red car were rolled up, and there were no gunshots

---

[1] As explained infra, to the extent that Claim II could have previously been construed as including a federal double jeopardy claim, that issue has now been struck by the District Court pursuant to the September 28, 2011 order. The only remaining federal argument that remains in Claim II is whether Petitioner's due process rights were violated when the state failed to follow procedures violating a purported state created liberty interest when he was convicted of discharging a firearm with gross negligence along with being convicted of shooting at an inhabited dwelling.

[2] The factual background is taken from the California Court of Appeal, Third Appellate District opinion filed on March 26, 2008 and lodged as document four to Respondent's Answer which was filed in this Court on February 22, 2010 (hereinafter referred to as the "Slip Op.").

from the car.

Shirley Logan, Lach's neighbor and a resident of the other half of the duplex, told police she was watching television when she heard "two loud booms." She heard people talking and went outside to investigate. As Logan stood outside talking to her neighbors, a small red car drove slowly down the street and made a U-turn in front of the duplex. Logan heard at least six or seven gunshots and saw muzzle flashes from across the street. [FN3] She turned and ran inside the duplex, continuing to hear gunfire as she entered her home to call 911.

[FN3] Logan testified that she did not see any muzzle flashes coming from the car.

Youn Seraypheap, a detective with the City of Stockton Police Department, was assigned to investigate the shooting. On May 24, 2005, Seraypheap and his partner, Detective Villanueva, interviewed defendant's mother, Toeur Mork, in front of her home. Mork first claimed she knew nothing about the shooting, telling detectives she left the party between 7:00 p.m. and 7:30 p.m. that evening with her husband and her youngest son because she had to be at work by 9:00 p.m. Mork said defendant was still at the party with his wife, Rinda Hoeurn, and their son when she left. Seraypheap and Villanueva next interviewed Hoeurn. Seraypheap told Hoeurn that defendant admitted to the shooting, and asked her to tell the truth about what happened. Hoeurn told them that, at some point during the party, "two or three carloads of Cambodian and Laotian people" from Modesto showed up and parked in the street. An argument later erupted between the group from Stockton and the group from Modesto. When the people from Modesto got back into their cars (one a red Acura Integra and another a Honda Accord) to leave, Hoeurn saw defendant shoot a handgun "two or three times" in the direction of the cars. Hoeurn ducked down and heard additional shots fired, which she believed came from the cars although she did not see any muzzle flashes. After the shooting, Hoeurn got into Mork's car with defendant and his family and went home.

When detectives finished questioning Hoeurn, they called Mork back outside. Seraypheap accused Mork of lying to them. Mork admitted she was inside the house watching television when she heard gunshots. She learned defendant was involved in the shooting and immediately left the party with her husband, her youngest son, defendant, Hoeurn, and her grandson. Mork told Seraypheap that, in the car on the way home, her husband yelled at defendant for shooting a gun.

Police canvassed the area and found six shell casings in the street between the house and the duplex. Four shotgun shells – two live rounds and two expended rounds – were also found in the

> driveway of the house where the party occurred.

(Slip Op at p. 2-5.)

III. PROCEDURAL HISTORY

Petitioner was arrested and charged with: assault with a firearm (Count I); shooting at an inhabited dwelling (Count II); attempted murder of Lach (Count III); attempted murder of John Doe (the unknown driver of the red Acura) (Count IV); felon in possession of a firearm (Count V); and negligent discharge of a firearm (Count VI).

> At trial, Mork denied ever hearing gunshots or seeing anybody shoot a gun, and denied telling Seraypheap that her husband yelled at the defendant in the car on the way home for shooting a gun. Hoeurn testified that she and her family (including the defendant) left the party when a friend told her there was some kind of problem. Hoeurn also denied hearing or seeing anyone shooting at the party, and denied telling Seraypheap anything else about the shooting.
>
> Near the end of the prosecution's case in chief, defense counsel requested, among other things, that the jury be instructed on self-defense based on Hoeurn's pretrial statements regarding possible shots fired from the red Acura. The court denied the request for lack of evidence. The defense rested without putting on any evidence.

(Slip Op. at p. 6.) The jury found Petitioner guilty of all counts except Count III. Petitioner was sentenced to twenty-nine years eight months to life imprisonment. The trial court stayed sentence on Count VI (negligent discharge of a firearm) pursuant to California Penal Code § 654.[3]

Petitioner appealed to the California Court of Appeal, Third Appellate District. Petitioner raised several claims on direct appeal to the California Court of Appeal. First, he argued that the

---

[3] California Penal Code § 654(a) states:

> An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other.

trial court should have *sua sponte* instructed the jury that one may use lethal force to protect a third person who faces imminent death or great bodily injury. Second, he argued that "[u]nder California law, a defendant cannot be convicted of a greater offense and a lesser offense included within it," such that he could not be convicted of Count VI in light of his conviction on Count II. Within this argument, Petitioner also asserted that "[t]o the extent the failure to follow state procedures directly or indirectly impairs a liberty interest, namely the right not to suffer a dual conviction when one offense is necessarily included in the other, the error results in a denial of due process under the Fourteenth Amendment. (Hicks v. Oklahoma (1980) 447 U.S. 343, 346.)" (Resp't's Lodged Doc. 1 at p. 22.) Petitioner also asserted that the sentence of Count V should be stayed pursuant to California Penal Code 654. On March 26, 2008, the California Court of Appeal denied Petitioner's claims in a written opinion.[4]

The California Supreme Court denied the petition for review on June 11, 2008 without discussion or citation. Subsequently, Petitioner filed this federal habeas petition and Respondent filed an answer.

On October 1, 2010, Respondent was ordered to supplement his answer in the event that Claim II included a federal double jeopardy claim. On October 13, 2010, Respondent supplemented his answer in compliance with the October 1, 2010 order. Respondent made two arguments in response. First, he argued that any double jeopardy claim is unexhausted. Second, Respondent argued that any double jeopardy claim can be denied on the merits.

On November 22, 2010, the undersigned construed Claim II as giving rise to a federal double jeopardy claim. This was done as federal courts have a duty to construe *pro se* habeas

---

[4] Petitioner also raised a fourth claim to the California Court of Appeal on direct appeal. Specifically, he argued that because the use of a firearm is an element of shooting at an inhabited dwelling in Count II, the accompanying personal firearm enhancement should have been stricken by the trial court. The California Court of Appeal determined that the firearm use enhancement with respect to Count II was expressly prohibited because the use of a weapon was a necessary element of shooting at an occupied dwelling. Thus, it struck the four-year sentence for that enhancement but affirmed the judgment in all other respects. (See Slip Op. at p. 11-12, 14.)

filings liberally. See Roy v. Lampert, 465 F.3d 964, 970 (9th Cir. 2006). Petitioner alleged the following in his federal habeas petition, "Appellant could not lawfully be convicted for shooting a firearm in a grossly negligent manner COUNT 6 because it is a lesser included offense of shooting a firearm at an occupied building." (Pet'r's Pet. at p. 6.) Thus, construing the petition liberally, the undersigned determined that Claim II could give rise to a double jeopardy claim because "[t]he Double Jeopardy Clause is implicated when a defendant has been convicted under the two different criminal statutes and both statutes prohibit the same offense or one offense is a lesser included offense of the others." United States v. Schales, 546 F.3d 965, 977 (9th Cir. 2008) (citations omitted); United States v. Davenport, 519 F.3d 940, 943 (9th Cir. 2008) ("When a defendant has violated two different criminal statutes, the double jeopardy provision is implicated when both statutes prohibit the same offense or when one offense is a lesser included offense of the other.") (citing Rutledge v. United States, 517 U.S. 2982, 297 (1996)). Petitioner did not explicitly mention the Double Jeopardy Clause in his federal habeas petition. However, his statement that shooting a firearm in a grossly negligent manner was a lesser included offense of shooting at an inhabited dwelling was liberally construed as giving rise to a double jeopardy argument.

Nevertheless, Petitioner failed to exhaust a federal double jeopardy argument in the state courts. In the November 22, 2010 order, the undersigned stated that Petitioner's broad citation to the federal due process clause was insufficient to exhaust a federal double jeopardy claim. As noted by the Ninth Circuit in Lyons v. Crawford, 232 F.3d 666, 668-69 (9th Cir. 2000), amended and superceded by, 247 F.3d 904 (9th Cir. 2001):

> Our rule is that a state prisoner has not "fairly presented" (and thus exhausted) his federal claims in state court unless he specifically indicated to that court that those claims were based on federal law. See Shumway v. Payne, 223 F.3d 982, 987-88 (9th Cir. 2000). Since the Supreme Court's decision in Duncan, this court has held that the petitioner must make the federal basis of the claim explicit either by citing federal law or the decisions of federal courts, even if the federal basis is "self-evident," Gatlin v. Madding, 189 F.3d 882, 889 (9th Cir. 1999) (citing Anderson v. Harless, 459 U.S. 4, 7

> (1982), or the underlying claim would be decided under state law on the same considerations that would control resolution of the claim on federal grounds, see, e.g., Hiivala v. Wood, 195 F.3d 1098, 1106-07 (9th Cir. 1999) . . . In Johnson, we explained that the petitioner must alert the state court to the fact that the relevant claim is a federal one without regard to how similar the state and federal standards for reviewing the claim may be or how obvious the violation of federal law is.

Petitioner's state court filings on direct appeal failed to apprise the state courts of the federal Double Jeopardy Clause. Even though the federal habeas petition was liberally construed as including a federal double jeopardy claim, the matter was unexhausted.

A court can dismiss a claim on the merits even if it is unexhausted if it is determined that the claim is not "colorable." See Cassett v. Stewart, 406 F.3d 614, 624 (9th Cir. 2005). Nevertheless, in February 2009 (or after Petitioner's petition for review to the California Supreme Court was denied on direct appeal), the California Supreme Court decided People v. Ramirez, 45 Cal. 4th 980, 990, 89 Cal. Rptr. 3d 586, 201 P.3d 466 (2009). In that case, the California Supreme Court held that discharging a firearm in a grossly negligent manner was a necessarily included lesser offense of shooting at an inhabited dwelling. Thus, in light of Ramirez, it was determined that Petitioner at least had a "colorable" federal double jeopardy claim. Ultimately, counsel was appointed to represent Petitioner so that Petitioner could decide whether to file a motion to stay and abey these federal habeas proceedings pending exhaustion of his double jeopardy argument in state court, or move forward only on his exhausted arguments.

On April 12, 2011, Petitioner filed a motion to stay and abey these proceedings pursuant to Rhines v. Weber, 544 U.S. 269 (2005). Respondent filed a response in opposition to the motion to stay and abey on April 26, 2011. Petitioner filed a reply on May 18, 2011.

On August 24, 2011, the undersigned recommended that the stay and abey motion be denied and that Petitioner's double jeopardy argument within Claim II be dismissed as unexhausted. On September 27, 2011, the District Judge adopted the findings and recommendations in full and struck the double jeopardy argument within Claim II as it was

construed by the undersigned because it was unexhausted.[5]

In light of the District Judge's September 28, 2011 order which struck any possibility that a federal double jeopardy argument could be adjudicated in this federal habeas proceedings within Claim II, it appears as if the matter is now ripe for adjudication on Claims I and III along with the remaining cognizable federal habeas argument within Claim II.

## IV. APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

An application for writ of habeas corpus by a person in custody under judgment of a state court can only be granted for violations of the Constitution or laws of the United States. See 28 U.S.C. § 2254(a); see also Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1994); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)). Petitioner filed this petition for writ of habeas corpus after April 24, 1996, thus the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies. See Lindh v. Murphy, 521 U.S. 320, 326 (1997). Under AEDPA, federal habeas corpus relief is not available for any claim decided on the merits in the state court proceedings unless the state court's adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court. See 28 U.S.C. 2254(d). Where a state court provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether the state court was objectively unreasonable in its application of clearly established federal law. See Musladin v. Lamarque, 555 F.3d 830, 835 (9th Cir. 2009).

As a threshold matter, a court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer v. Andrade,

---

[5] Petitioner has a pending state habeas petition before the California Supreme Court purportedly on this double jeopardy issue. See Sum v. Dep't of Corr. & Rehabilitation, Case No. S196356.

538 U.S. 63, 71 (2003) (quoting 28 U.S.C. § 2254(d)(1)). "'[C]learly established federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.'" Id. (citations omitted). Under the unreasonable application clause, a federal habeas court making the unreasonable application inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." See Williams v. Taylor, 529 U.S. 362, 409 (2000). Thus, "a federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is an objectively unreasonable application of clearly established federal law. See Clark v. Murphy, 331 F.3d 1062, 1070 (9th Cir. 2003) ("While only the Supreme Court's precedents are binding . . . and only those precedents need be reasonably applied, we may look for guidance to circuit precedents.").

## V. PETITIONER'S CLAIMS FOR REVIEW

### A. Claim I

In Claim I, Petitioner alleges that the trial court should have instructed the jury *sua sponte* that a person could use lethal force to protect a third person who faces imminent death or great bodily injury. The California Court of Appeal analyzed this Claim on the merits. It stated the following:

> Defendant contends the trial court erred in its refusal to instruct the jury on the use of lethal force in defense of a third party. In particular, he argues the trial court could have drawn an inference from the evidence that, when defendant fired at the car, he "was doing so in the reasonable belief that Ms. Hoeurn and possibly others faced great bodily injury or death."
>
> It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. (People v. Garvin (2003) 110 Cal.App.4th 484, 488 quoting People v. St. Martin

(1970) 1 Cal.3d 524, 531.) "[T]he duty to instruct, sua sponte, in a criminal case on particular defenses and their relevance to the charged offense arises only if it appears that defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense and the defense is not inconsistent with defendant's theory of the case." (People v. Jones (1981) 123 Cal.App.3d 83, 93-94, citing People v. Sedeno (1974) 10 Cal.3d 701, 716, italics omitted.)

In determining whether sufficient evidence supports a certain jury instruction, the court does not assess the credibility of the evidence. (People v. Middleton (1997) 52 Cal.App.4th 19, 33, disapproved on another matter in People v. Gonzalez (2003) 31 Cal.4th 745, 752, fn. 3.)

There is nothing in the record to suggest that defendant relied on the defense of self-defense or defense of others. Defendant did not testify, nor did he call any defense witnesses or put on any evidence. During closing argument, defense counsel argued that the shot that hit Lach could have come from the car; he did not argue that any of the shots fired by defendant were fired in defense of himself or others.

The record is devoid of evidence to support a defense of self-defense or defense of others. Lach told police he saw defendant fire twice into the air and then walk towards the red Acura, which had turned and stopped between defendant and Lach. Although he did not see who fired the six to eight shots that followed (one of which hit him in the leg), Lach could tell the shots were coming "from the direction [ ] of the vehicle" (but not from inside the vehicle) and noted that the car's windows were rolled up. Lach's neighbor, Logan, heard at least six or seven shots and saw muzzle flashes from across the street, not from the car. Hoeurn told detectives she saw defendant "shooting a handgun in the direction of the people in the cars." That evidence suggests that defendant was firing on the car; it does not support speculation that defendant fired *after* seeing a gun in the car or being fired upon by someone in the car.

Defendant argues the fact that Hoeurn told detectives she ducked and heard gunshots she thought were coming from the car is evidence from which the jury could reasonably infer that someone on the car was shooting in Hoeurn's direction. "Given that Ms. Hoeurn and possibly others ducked," defendant argues, a jury could reasonably conclude defendant was shooting at the car in order to defend Hoeurn and the others. The record reflects otherwise.

Hoeurn told Seraypheap she and others ducked down *after* defendant shot his handgun two or three times in the direction of the cars, not *before*. There is no evidence that the shooting by

> defendant, while across the street from Lach's duplex, was instigated by the occupants of a car, or that those occupants fired first on defendant, Houern or anyone else.
>
> In refusing the requested self-defense instruction, the court concluded there was no evidence from which "any reasonable jury could conclude that there's a probability . . . that defendant either saw somebody with a gun or had for some reason shot up in the air, and then saw somebody with a gun and blazed away at them." We conclude there was no error in the trial court's refusal to instruct on self-defense.

(Slip. Op. at p. 7-10.)

Claims based on instructional error under state law are not cognizable on federal habeas review. See Estelle v. McGuire, 502 U.S. 62, 71-72 (1991) (citing Marshall v. Lonberger, 459 U.S. 422, 438 n.6 (1983)); see also Menendez v. Terhune, 422 F.3d 1012, 1029 (9th Cir. 2005). To receive federal habeas relief for an error in the jury instructions, Petitioner must show that the error so infected the entire trial that the resulting conviction violates due process. See Estelle, 502 U.S. at 72; see also Henderson v. Kibbe, 431 U.S. 145, 154 (1977). "Due process requires that criminal prosecutions comport with prevailing notions of fundamental fairness and that criminal defendants be afforded a meaningful opportunity to present a complete defense." Clark v. Brown, 450 F.3d 898, 904 (9th Cir. 2006). "A defendant is entitled to an instruction on his theory of the case if the theory is legally cognizable and there is evidence upon which the jury could rationally find for the defendant." United States v. Boulware, 558 F.3d 971, 974 (9th Cir. 2009).

In order to obtain federal habeas relief on this Claim, Petitioner "must show that the alleged instructional error had substantial and injurious effect or influence in determining the jury's verdict." Id. (internal quotation marks and citations omitted). "A substantial and injurious effect means a reasonable probability that the jury would have arrived at a different verdict had the instruction been given." Byrd v. Lewis, 566 F.3d 855, 860 (9th Cir. 2009), cert. denied, 130 S.Ct. 2103 (2010). In analyzing whether the Petitioner has suffered prejudice, two factors are considered: "(1) the weight of the evidence that contradicts the defense; and (2) whether the

defense could have completely absolved the defendant of the charge." Id. (citing Beardslee, 358 F.3d at 578). In this case, the burden on Petitioner is especially heavy where the alleged error involves the failure to give an instruction. See id. (quoting Clark v. Brown, 450 F.3d 898, 904 (9th Cir. 2006)).

To assert a claim of self-defense, petitioner must have actually and reasonably believed he was facing an imminent and unlawful threat or death or great bodily injury and must have had an actual and reasonable belief in the need to defend himself. See People v. Humphrey, 13 Cal. 4th 1073, 1082-83, 56 Cal. Rptr. 2d 142, 921 P.2d 1 (1996); cf. CALJIC 5.13 ("Homicide is justifiable and not unlawful when committed by any person in the defense of [himself] [herself] [[his] [her] ________] if [he] [she] actually and reasonably believed the individual killed intended to commit a forcible and atrocious crime and that there was imminent danger of that crime being accomplished.") As outlined above, the California Court of Appeal rejected this Claim by concluding that there was a lack of evidence in the record to support the instruction.

In his state court filings, Petitioner argued that the record indicated that after he shot two shots in the air, others ducked in response to return gunfire coming from the direction of the red car. Petitioner asserts that as Ms. Hoeurn ducked, he fired in the direction of the red car to protect her. (See Resp't's Lodged Doc. 1 at p. 9-10.) However, the record does not support Petitioner's argument. The testimony of the detective who interviewed Ms. Hoeurn indicated that Petitioner shot before the individuals ducked behind cars. (See Reporter's Tr. at p. 206.)

The evidence in the record regarding Petitioner's purported self-defense theory was lacking. The jury could not rationally find that the defendant was acting in self-defense to warrant giving the instruction *sua sponte*. See Boulware, 558 F.3d at 974. Petitioner cannot overcome his especially heavy burden that the trial court erred in failing to instruct the jury on his argument within Claim I. Accordingly, Petitioner is not entitled to federal habeas relief on this Claim.

//

B. Claim II

Petitioner argues in his federal habeas petition that he could not lawfully be convicted for shooting a firearm in a grossly negligent manner under Count VI because it is a lesser included offense shooting a firearm at an occupied building (Count II). The sentence on Count VI was stayed but the conviction remains in place. Interpreted liberally, the undersigned determined that Claim II could give rise to a federal double jeopardy claim even though Petitioner never specifically mentioned the Double Jeopardy Clause. However, any double jeopardy argument within Claim II was struck by the District Judge in the September 28, 2011 order. Accordingly, the analysis of Claim II will not discuss any possible double jeopardy claim that Petitioner may have had within Claim II.

At the outset, to the extent that Petitioner relies on state law to support this Claim, his argument does not merit federal habeas relief. See Estelle, 502 U.S. at 67-68 (stating that "it is not the province of a federal habeas court to reexamine state-court determinations of state-law questions). However, Claim II does not only rely on and cite to state law. Instead, in his state filings, Petitioner asserted that "[t]o the extent the failure to follow state procedures directly or indirectly impairs a liberty interest, namely the right not to suffer a dual conviction when one offense is necessarily included in the other, the error results in a denial of due process under the Fourteenth Amendment (Hicks v. Oklahoma (1980) 447 U.S. 343, 346)." (Resp't's Lodged Doc. 5 at p. 12-13.) In his federal habeas petition, Petitioner also cites to Sullivan v. Louisiana, 508 U.S. 275 (1993) to support Claim II.

As stated above, Petitioner invoked the Fourteenth Amendment and the Due Process Clause on direct appeal in this Claim. He argued that the state failed to follow procedures which gave rise to a due process violation. However, Petitioner does not explain what procedures were not followed. Petitioner was given the opportunity on appeal to make what amounts to a substantive legal argument that Count VI was a lesser included offense of Count II. At the time of Petitioner's appeal, there was a split of authority among the California state courts regarding

whether shooting a firearm in a grossly negligent manner was a lesser included offense of shooting a firearm at an occupied building. Compare People v. Overman, 126 Cal. App. 4th 1344, 1360, 24 Cal. Rptr. 3d 798 (2005) (holding that shooting a firearm in a grossly negligent manner is a lesser included offense of shooting at an inhabited dwelling) with People v. Ramirez, 65 Cal. Rptr. 3d 481, 488 (Cal. Ct. App. 2007) (holding that shooting a firearm in a grossly negligent manner is not a lesser included offense of shooting at an inhabited dwelling), rev'd by, 45 Cal. 4th 980, 89 Cal. Rptr. 3d 586, 201 P.3d 466. The California Court of Appeal in Petitioner's case disagreed with Overman in deciding in March 2008 that Count VI was not a lesser included offense of Count II. Petitioner was given the right to litigate this substantive legal issue on appeal. Petitioner did pursue the issue through the state courts, including the California Supreme Court, which denied his petition for review. Accordingly, Petitioner was entitled to raise this substantive legal issue and was afforded the relevant procedural protection to make and argue this substantive legal point in his state appellate filings.

In the state courts, Petitioner cited to Hicks, 447 U.S. 343 to support this Claim. Hicks involved a defendant who had been convicted of felony offenses twice within the preceding ten years and the members of the jury were instructed that if they found defendant guilty, they shall assess a punishment of 40 years imprisonment. See id. at 344-45. The jury returned a guilty verdict and imposed the mandatory 40 year prison term. See id. at 345. After Petitioner's conviction, the provision of the habitual offender statute which the mandatory forty year imprisonment term was imposed was found to be unconstitutional. See id. Petitioner sought to have his sentence set aside in view of this unconstitutionality. See id. The state appellate court affirmed the conviction "reasoning that the petitioner was not prejudiced by the impact of the invalid statute, since his sentence was within the range of punishment that could have been imposed in any event." Id.

In Hicks, the Supreme Court found that a state's *existing* statute which required a jury to determine a defendant's sentence "created a substantial and legitimate expectation that [the

defendant] will be deprived of his liberty only to the extent determined by the jury in the exercise of its statutory discretion." 447 U.S. at 346. The Supreme Court determined in Hicks that the state appellate court's refusal to issue a ruling which comported with the state's prescribed sentencing procedure deprived the defendant of a liberty interest without due process of law. It explained that the state "denied the petitioner the jury sentence to which he was entitled under state law, simply on the frail conjecture that a jury *might* have imposed a sentence equally as harsh as that mandated by the invalid habitual offender statute. Such an arbitrary disregard of the petitioner's right to liberty is a denial of due process of law." Id. at 346.

Petitioner's reliance on Hicks is unpersuasive in this case. Petitioner's argument within Claim II is not one of improper procedures as it was in Hicks. In Hicks, as explained above, the issue was whether the state appellate court's actions were procedurally improper because the jury instead of the court should have set the defendant's sentence. In this case, however, the issue as defined by Petitioner is a substantive legal issue of whether Count VI is a lesser included offense of Count II. Petitioner was given the procedural opportunity to present this substantive legal point to the California Supreme Court in his petition for review. At the time of Petitioner's case, the California courts were split on the issue of whether Count VI would be considered a lesser included offense of Claim II. Thus, this case is different than Hicks which involved the state court substituting itself for the role of the jury in sentencing the defendant as it pertained to a then existing statute.

In Cooke v. Swarthout, 131 S.Ct. 859, 861 (2011) (per curiam), the Supreme Court stated that, "[a]s for the Due Process Clause, standard analysis under that provision proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." Id. Cooke involved the Supreme Court's review of the Ninth Circuit's holding that California law created a liberty interest in parole. See id. The Supreme Court found that it was a reasonable application of its cases that California law created that liberty interest. See id. The

Supreme Court explained that when "a State creates a liberty interest, the Due Process Clause requires fair procedures for its vindication – and federal courts will review the application of those constitutionally required procedures." Id. at 862. In the context of parole, the Supreme Court in Cooke stated that the procedures required the prisoner be allowed an opportunity to be heard and also a statements of the reasons why parole was denied. 131 S.Ct. at 862.

Cooke's analysis, while in the context of a parole case, is instructive where a petitioner also makes an argument that the state failed to follow procedures on a purported state created liberty interest. In this case, Petitioner argued that the state failed to follow proper procedures in convicting him of Count VI when he had already been convicted of Count II. However, as previously explained, Petitioner's argument is not an improper procedure argument but really an argument that the state court erred on the merits of a substantive legal issue. Petitioner raised this substantive legal issue in the state courts and the state courts disagreed with Petitioner's substantive legal argument. Based on how Petitioner has set out Claim II as a failure to follow state procedures toward a purported state created liberty interest, it is not a federal habeas court's position to determine "whether the state court decided the case correctly." Id. Accordingly, Claim II should be denied.[6]

Petitioner also cites to Sullivan in support of Claim II. In Sullivan, the issue was whether a constitutionally deficient reasonable doubt instruction can be harmless error. See 508 U.S. at 276. Ultimately, the Supreme Court determined that a constitutionally deficient reasonable doubt

---

[6] Furthermore, as previously indicated, at the time of Petitioner's appellate proceedings, there was a split on the substantive legal issue of whether Count II was a lesser included offense of Count VI. Accordingly, the state could not have been considered to have "created" a liberty interest where the state courts could not agree at the time whether Count VI was a lesser included offense of Count II. It is worth reiterating that Petitioner's only federal argument within Claim II that is remaining is that the state courts had improper procedures which would allow Petitioner to vindicate his right. As previously set forth, Petitioner was permitted and in fact did raise this substantive legal issue in his appellate state court filings. Petitioner fails to show that these procedures to vindicate a purported substantive legal right were insufficient. At the time of Petitioner's appeal, the state courts disagreed with Petitioner's substantive legal position on the issue as illustrated by the California Court of Appeal and the California Supreme Court's denial of this Claim.

instruction cannot be harmless error. See id. at 280-81. Claim II does not involve the constitutionality of a purportedly deficient reasonable doubt instruction. Accordingly, Sullivan also does not support a finding sufficient to grant Petitioner federal habeas relief on this Claim.

For the foregoing reasons, Petitioner is not entitled to federal habeas relief on what remains within Claim II.

C. Claim III

In Claim III, Petitioner argues that his sentence for possession of a firearm by a felon should have been stayed pursuant to Cal. Penal Code § 654 because there was insufficient evidence to establish multiple criminal intents. The California Court of Appeal analyzed this Claim on direct appeal and stated the following:

> Defendant contends that, because the evidence is insufficient to show he "harbored multiple criminal intents when he possessed the firearm and used it in carrying out the other felonies," section 654 prohibits separate punishment for being a felon in possession of a firearm. We disagree.
>
> Section 654, subdivision (a), provides: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other."
>
> "Whether a violation of section 12021, forbidding persons convicted of felonies from possession firearms concealable upon the person, constitutes a divisible transaction from the offense in which he employs the weapon depends upon the facts and evidence of each individual case. [Citation.] Thus where the evidence shows a possession distinctly antecedent and separate from the primary offense, punishment on both crimes has been approved. [Citations.] On the other hand, where the evidence shows a possession only in conjunction with the primary offense, then punishment for the illegal possession of the firearm has been held to be improper where it is the lesser offense. [Citations.]" (People v. Venegas (1970) 10 Cal.App.3d 814, 821; accord, People v. Bradford (1976) 17 Cal.3d 8, 22 and People v. Ratcliff (1990) 223 Cal.App.3d 1401, 1408.)
>
> We review the trial court's determination of whether the defendant held multiple criminal objectives for substantial evidence. (People

> v. Simon (1989) 208 Cal.App.3d 841, 852.)
>
> Lach testified that he saw defendant fire the gun twice into the air after becoming upset that several people at the party were trying to keep him away from the argument that was taking place between some of the partygoers. The second round of shooting came after the red Acura drove down the street and turned and stopped in front of Lach's duplex. The act of firing shots into the air during the argument between partygoers was distinctly antecedent and separate from defendant's subsequent act of approaching and firing on the car, regardless of the fact that the two series of acts were not on different days or at separate sites. "An ex-felon who owns, possesses, or has custody or control of a firearm commits a felony" under section 12021, subdivision (a). (People v. Ratcliff, supra 223 Cal.App.3d at p. 1410.) We conclude there is substantial evidence of possession separate and distinctly antecedent to defendant shooint at the car and the duplex. (People v. Venegas, supra 10 Cal.App.3d at p. 821.)

(Slip Op. at p. 12-14.)

As previously noted, a federal habeas petitioner must assert a violation of the Constitution, federal law or treaties of the United States in order to be entitled to relief. See Estelle, 502 U.S. 62, 67-68 (1991); see also Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (habeas relief not available for state law errors that are not of a constitutional dimension). Petitioner's claim that the term imposed in Count IV (8 months for being a felon in possession of firearm) should have been stayed at sentencing pursuant to state law fails to allege a violation for which relief can be granted. See Carcoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994) ("The decision whether to impose sentences concurrently or consecutively is a matter of state criminal procedure and not within the purview of federal habeas corpus."); Watts v. Bonneville, 879 F.2d 685, 687 (9th Cir. 1989) (alleged violation of section 654 is a state law claim not cognizable in a federal habeas corpus proceeding). Accordingly, Petitioner is not entitled to federal habeas relief on Claim III.[7]

---

[7] Petitioner cites to Vitek v. Jones, 445 U.S. 480 (1980) in his federal habeas petition within Claim III. However, that case does not support Petitioner's argument for federal habeas relief in Claim III. In Vitek, the United States Supreme Court analyzed "whether the Due

VI. CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that the petition for writ of habeas corpus be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within seven days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991). In any objections he elects to file, Petitioner may address whether a certificate of appealability should issue in the event he elects to file an appeal from the judgment in this case. See Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: June 27, 2012

TIMOTHY J BOMMER
UNITED STATES MAGISTRATE JUDGE

---

Process Clause of the Fourteenth Amendment entitles a prisoner convicted and incarcerated . . . to certain procedural protections, including notice, an adversary hearing, and provision of counsel, before he is transferred involuntarily to a state mental hospital for treatment of a mental disease or defect." Id. at 482-83. Thus, Vitek's decision does not implicate Petitioner's arguments within Claim III so as to give rise to a federal Constitutional claim.